## INTERNATIONAL LONGSHOREMEN'S ASS'N, LOCAL 815, et al. v. NATIONAL TERMINALS CORPORATION.

### No. 680.

District Court, E. D. Wisconsin.

May 15, 1943.

A. W. Richter, of Milwaukee, Wis., for plaintiffs.

Miller, Mack & Fairchild and J. Gilbert Hardgrove, all of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

This is an action under § 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216(b), for overtime compensation, liquidated damages, and attorney fees.

The individual plaintiffs, all former employees of the defendant, are members of International Longshoremen's Association, their co-plaintiff (hereinafter called the "union"), which was the authorized collective bargaining agent of the plaintiffs, and, during the times in question, was certified as bona fide by the National Labor Relations Board.

The defendant, a Delaware corporation licensed to do business in Wisconsin, was engaged in the business of handling and storing merchandise transported by ships upon the Great Lakes. It is conceded that it and the individual plaintiffs were engaged in interstate commerce.

The controversy exists under § 7 of the act, 29 U.S.C.A. § 207, establishing and regulating maximum hours. So far as applicable, § 7 provides:

"Maximum hours

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(b) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed—

"(1) in pursuance of an agreement made as a result of collective bargaining by representatives of employees certified as bona fide by the National Labor Relations Board, which provides that no employee shall be employed more than one thousand hours during *any* period of twenty-six consecutive weeks,

\* \* \* \* \* \*

and if such employee receives compensation for employment in excess of 12 hours in any workday, or for employment in excess of 56 hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

\* \* \* \* \* \*

"(d) This section shall take effect upon the expiration of one hundred and twenty days from the date of enactment of this Act." (Italics ours.)

■ The act, including the provisions of § 7, is constitutionally valid. United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. An exemption from the general scope of a remedial statute is subject to strict construction and should be extended only to those plainly within its terms. Miller Hatcheries v. Boyer, 8 Cir., 131 F.2d 283, 285, 286.

Several contracts between the union and the defendant were received in evidence, pursuant to which the individual plaintiffs were employed. Six of these covered the period between the effective date of the act and the bringing of this action on Decem-

ber 26, 1941. This entire period was covered by the three contracts covering stevedores. The remaining three contracts provided for the employment of union members as warehousemen.

The contracts referred to and the periods during which they were respectively effective are as follows:

1. Stevedoring Contract dated April 26, 1938 (defendant's Exhibit A), in effect from April 15, 1938, until April 15, 1939. This contract was entered into before the enactment of the act and contains no provisions purporting to exempt the employment from the operation of the act.

2. Stevedoring Contract dated April 29, 1939 (defendant's Exhibit B), in effect from April 15, 1939, until April 15, 1940. The following provision of this contract is material: "It is further mutually agreed by both parties to this agreement that working conditions, hours, and wages will be as provided in section 7-B-1 of Fair Labor Standards Act of 1938, which provides that no employe shall be employed more than 1000 hours, during period of 26 consecutive weeks commencing with effective date of this agreement and agree to extension of a second period after completion of first period."

3. Stevedoring Contract dated April 15, 1940 (defendant's Exhibit C, also plaintiffs' Exhibit 3), in effect from April 15, 1940, until April 15, 1942. The following provision of this contract is material: "It is further mutually agreed by both parties to this agreement that working conditions, hours and wages will be as provided in Section 7-B-1 of Fair Labor Standards Act of 1938, which provides that no employe shall be employed more than 1000 hours, nor more than 56 hours in any one week, during period of 26 consecutive weeks, commencing with effective date of this agreement. Both parties agree to extension of a second period after completion of first period. It being further understood and agreed that the Employer shall have the right to suspend the employment of any men during any week in which they have worked the maximum of 56 hours as provided in said Fair Labor Standards Act of 1938."

4. Warehouse Employment Contract dated April 30, 1938 (plaintiffs' Exhibit 1), in effect from April 15, 1938, until April 15, 1939.

5. Warehouse Employment Contract dated April 29, 1939 (plaintiffs' Exhibit 2), in effect from April 15, 1939, until April 15, 1940.

6. Warehouse Employment Contract dated September 4, 1941 (plaintiffs' Exhibit 4), in effect from September 4, 1941, until April 15, 1942. In the three warehousing contracts there are no provisions with regard to the Fair Labor Standards Act of 1938 as above quoted from defendant's Exhibits B and C.

By reason of the contract provisions heretofore quoted from defendant's Exhibits B and C, defendant claims exemption from the act. § 7(b) (1). It will be noted that instead of providing for "*any* period of twenty-six consecutive weeks", the parties designated only two definite periods of 26 weeks each. The intention of the parties is shown by the language, "Both parties agree to extension of a second period after completion of first period."

Congress intended that in order for contracts to be exempt from the act they must cover *any* period of 26 consecutive weeks. Furthermore, the contracts which we are considering ignored the provision of the act, "and if such employee receives compensation for employment in excess of 12 hours in any workday, or for employment in excess of 56 hours in any workweek, as the case may be, at a rate *not less than one and one-half times the regular rate* at which he is employed." It is a necessary requirement that if a contract is to be exempt it must include a provision that overtime will be paid for at time and one-half the regular rate. Walling v. Stone, 7 Cir., 131 F.2d 461, 463.

The contracts in this case do not conform to the legislative standard, and are insufficient to establish exemption from § 7(a) of the act. This conclusion accords with the construction of the administrator appointed under the act. Interpretative Bulletin No. 4 (1942 Wage-Hour Manual, pp. 567, 569). Such construction is entitled to great respect. Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 552, 140 A.L.R. 1258.

We must now consider what was due each plaintiff as overtime. The computation is complicated because the contracts prescribe different rates of pay for different kinds of work. In the Stevedore Contract (Exhibit B), there are varying rates of pay

for (a) housemen, coopers, truckers, and stowers; (b) for automobile drivers; (c) for winch operators; and (d) for handlers of so-called obnoxious cargo. Whenever defendant required the services of workmen, it would notify the union as to the amount of tonnage to be handled. The union would send a sufficient number of men. They were not hired to do any particular type of work. They might work several hours unloading boats, to be followed by several hours' work in the warehouse. The contracts specified the different rates of wages for the various operations. During one day an employee may have had duties which would be classified under two, three, or even four wage scales.

■ We cannot be governed by the contract definition of "overtime", as it is clear that the overtime mentioned therein does not correspond to the overtime contemplated by the statute. For example, the provision relating to wages of housemen, coopers, truckers, and stowers reads: "Wages for all work done between the hours of 7 a.m. and 6 p.m. shall be Seventy Five Cents (75¢) per hour, hereafter known as straight time. Wages for all work done between the hours of 6 p.m. and 7 a.m. and for all work on Sundays and the following holidays * * * shall be Eighty Five Cents (85¢) per hour, hereafter known as overtime." It seems very evident that the "overtime" mentioned in the contracts is the "regular rate" to be paid for work on the night shift, on Sundays, and on holidays.

■ The statute uses the term, "the regular rate at which he is employed." We must determine the regular rate at which each of the plaintiffs was employed. The higher rate for night, Sunday and holiday work is just as much a regular rate as the lower rate for daytime work. The higher rate was merely an inducement to accept employment at times which were not as desirable from a workman's standpoint. Therefore, if any of the plaintiffs worked part of the week at daytime labor in the warehouse and another part of the week at nighttime labor unloading a boat, and the balance of the week at nighttime Sunday labor in the warehouse, the contract rates specified for each of these types of work is the regular rate at which that plaintiff was employed. As an example, we will assume that the plaintiff Dan Cabunac worked 50 hours in a certain week during that period when the workweek limit was 44 hours.

We will further assume his employment was divided as follows: warehouse, 30 hours of daytime work at 60¢ per hour; boat rate, 6 hours daytime work at 75¢ per hour; boat rate, 8 hours of nighttime work at 85¢ per hour; warehouse, 6 hours of daytime work (this would be "overtime") at 90¢ per hour. In this suppositious case, when Cabunac had exhausted the 44 hour week, he worked 6 additional hours in the warehouse during the daytime, for which he would be entitled to time and one-half, or at the rate of 90¢ per hour. If he had worked the 6 hours overtime at night on the boat, he would have been entitled to compensation of $1.275 per hour, which is one and one-half times the 85¢ nighttime rate.

■ The court is unable to adopt defendant's contention that the effective date of the act should be considered as October 29, 1938. By its terms the act became effective 120 days from the date of its enactment, which would be Monday, October 24, 1938. The first workweek started on October 24, 1938, and ended on Saturday, October 29, 1938.

■ Although overtime pay may be properly figured on the basis which I have heretofore indicated, since the decision in Walling v. Stone, 7 Cir., 131 F.2d 461, the employer is considered to have an option in computing overtime rates for employees who receive more than one rate of pay during a workweek. It may be based either on the average hourly rate for the entire week, or on the hourly or piece rate that is applicable during the overtime hours. The example heretofore given is, of course, on the latter basis.

I am assuming that as the defendant made no objection to the basis on which plaintiffs' Stipulated Exhibit 1 was figured, it has thus exercised its option. Therefore, the findings may be prepared on the basis of the figures contained in that exhibit.

■ If this court had any discretion in the matter, liquidated damages would not be awarded. The claim of plaintiffs' counsel that "The employer with the usual advantage of knowledge inserted something into a contract which it was making with these uneducated and humble workmen * * *" is not impressive in this case. The contract Exhibit B is in mimeograph form. The name, "International Longshoremen's Association, Local 815, cf Milwaukee, Wisconsin", appears as an integral part of the contract, while the name of the

30

employer is stamped in. The clause complained of is part of the prepared agreement. The same clause appears in a contract between the same union and Stephen H. Du Puy, under date of April 29, 1939, which contract is before the court in another case. However, the provision for liquidated damages is mandatory. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 581, 62 S.Ct. 1216, 86 L.Ed. 1682. Whenever there is a violation of the overtime provision of the act, the employer becomes liable to the employee for the unpaid overtime compensation and an additional equal amount as liquidated damages. 29 U.S.C.A. § 216(b). Reasonable attorney fees in the sum of $100 will also be allowed.

Since the employees interested and involved are individually named as plaintiffs, the union is not a proper party plaintiff and the action as far as the union is concerned may be dismissed with costs.