## HENDRICKS v. DI GIORGIO FRUIT CORPORATION.

### No. 22090.

District Court, N. D. California, S. D.

April 7, 1943.

Jonathan H. Rowell, of San Francisco, Cal., for plaintiff.

Brobeck, Phleger & Harrison and Gregory A. Harrison, all of San Francisco, Cal., for defendant.

Irving J. Levy, Acting Sol., of Washington, D. C., Dorothy M. Williams, Regional Atty., of San Francisco, Cal., and James H. Shelton, of Washington, D. C., for administrator as amicus curiæ.

ROCHE, District Judge.

This is an action for overtime payment and an equal amount as liquidated damages brought under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C.A. § 216 (b), by the plaintiff on behalf of himself and all other employees similarly situated. It is not questioned that the defendant, which operates a winery, produces goods for interstate commerce and is therefore subject to the Act. The only question is the applicability of the exemptions provided therein by Section 7(b) (3) and (c), 29 U.S.C.A. § 207(b) (3), (c).[1]

From the stipulated facts it appears that the defendant makes wines, brandy and grape concentrates. Its normal operating season runs from the middle of July to the latter part of December, during which time grapes are crushed and their juice processed. When this crushing season is over the staff of employees is cut considerably and those remaining are chiefly occupied with the ordinary duties of upkeep, testing and blending wines for special orders and shipping the products. The defendant does no bottling but sells its products in bulk. Grapes are very perishable and must be handled as rapidly as they come in so crushing is normally carried on nine hours a day, six days a week, although sometimes on Sunday as well. All the juice goes through the first fermenting tank. In the case of the grape concentrates it is withdrawn before fermentation begins and is then, by a vacuum process, reduced to concentrated form. This process takes only a day. Dry wine results from slightly fermenting the juice in the first tank and then completing fermentation in the cooling tank, a process that takes from two to three weeks. The fortified wines require a shorter period of time, normally from ten to twelve days, but the process is more complicated. In making such fortified wines the juice goes from the first to a second fermenting tank where it is mixed with grape concentrates, and then to the fortifying tank where high-proof fortifying brandy is added. This mixture is then racked through the pasteurizer to the storage tank. Until pasteurized the juice is extremely perishable. Brandy is made from distilling material composed of completely fermented grape juice plus wash and press material and, occasionally, white wine. The complete process takes about a week. Each of the foregoing processes is continuous and if stopped at any stage prior to completion the resultant product would either be waste or good only for vinegar.

The overtime hours involved herein were worked during 1939, 1940 and 1941. The 1939 period extends from September 16 to

[1] The pertinent portions of the Act are as follows: "Sec. 7. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or

"(3) for a workweek longer than forty hours after the expiration of the second year from such date,
unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(b) No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed— * * *

"(3) for a period or periods of not more than fourteen workweeks in the aggregate in any calendar year in an industry found by the Administrator to be of a seasonal nature,
and if such employee receives compensation for employment in excess of 12 hours in any workday, or for employment in excess of 56 hours in any workweek, as the case may be, at a rate not less than one and one-half times the regular rate at which he is employed.

"(c) * * * and in the case of an employer engaged in the first processing of, or in canning or packing, perishable or seasonal fresh fruits or vegetables, * * * the provisions of subsection (a), during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

December 9, during which time the plaintiff was employed as a still operator producing high-proof fortifying brandy for use by the defendant in making fortified wines. The exemption claimed for this period is Section 7(c) or the "first processing of * * * perishable or seasonal fresh fruits". During 1940 the plaintiff was employed as a cellar worker from June 8 to August 31 and from the latter date to December 21 as a still operator. No exemption is claimed for overtime worked during June or the first three weeks of July. Section 7(b) (3), the "seasonal industry" exemption, is claimed for the first week in September and for the period from November 16 to December 14. Section 7(c) is claimed for the weeks not so covered. In 1941 plaintiff was employed as a laboratory assistant for the first two weeks in June and as a cellar worker from June 14 to August 2. Section 7(b) (3) is the exemption claimed. In each year there were some workweeks during which plaintiff worked no overtime.

Plaintiff and amicus curiae, who file a brief on behalf of the Administrator, contend that only the crushing of the grapes and fermenting of the juice can be considered "first processing" operations; that distilling brandy and fortifying wine are second processing operations and, therefore, his work as a distiller could not be classed as first processing or as "operations that are so closely associated thereto that they cannot be segregated for practical purposes"—Interpretative Bulletin No. 14.

The defendant argues that the term covers those operations that first result in a marketable product—for example, the making of flour from wheat as contrasted with the making of bread from flour—and that thus all of its wine making operations are "first processing".

Plaintiff's right to recover necessarily rests upon the interpretation and application of the phrase "first processing" as used in Section 7(c) of the Act. If defendant's operations be deemed the "first processing of * * * perishable or seasonal fresh fruits", then both of the exemptions are properly claimed since on August 24, 1940, the Administrator determined that "The first processing and canning of perishable or seasonal fresh fruits and vegetables is a branch of an industry and of a seasonal nature within the meaning of Section 7(b) (3) of the Fair Labor Standards Act and Part 526 as amended of the Regulations issued thereunder". Federal Register, Vol. 5, No. 166, p. 3167.

This is a case of first impression with no judicial guideposts for the court to follow in interpreting the phrase. The Administrator has defined the term as follows: "In our opinion 'processing' connotes a change in the form of the raw materials. It follows that 'first processing' means the first such change in the form of the raw materials". Interpretative Bulletin No. 14, 2 C.C.H. Labor Law Service, pages 32,430, 32,431. The Administrator's view is entitled to thoughtful consideration but is, of course, not binding on the court.

In Section 7(c) the phrase is used in conjunction with the words "canning" and "packing". Fresh fruits and vegetables are commonly subjected to various processes which are analogous to canning or packing but which are not identified by those terms. It seems clear that "first processing" was used to cover such analogous processes. To hold that the term covers only the first step in such process, as, for example, the crushing of the grapes in the instant situation, would not only be unreasonable but would tend to defeat the obvious purpose of the exemption. The legislative history of the Act shows that Congress realized that perishable or seasonal fresh fruits or vegetables must be processed when they reach the proper stage and that such stage depends upon natural factors which man cannot control. There was the further realization that increased wage costs in those industries which deal directly with the farmer, and to which he sells his products, would probably result in lower prices to the farmer. It was to meet these problems that the exemptions in question were proposed, and certainly they should be construed with this in mind. To rule that exemptions in a remedial statute should be strictly construed without considering the effect of such construction on the clear purpose of the exemptions would ignore the lawmakers' intent.

■■■ If "first processing" does not mean the processing that first results in a marketable product, where is the line to be drawn? It is true that the wine or brandy making process may be broken down into component processes or operations, and that these, in turn, may be broken down still further. But the same thing is true of any other process, as, for example, the produc-

tion of dried and frozen fruits and vegetables, condensed, evaporated and dried milk, butter, cheese, dried eggs, and flour, all of which, the Administrator has held, fall within the exemption. Obviously, first processing does not end at some arbitrarily chosen point in the midst of the wine or brandy making process, any more than it ends at such a point in the cheese making process. The stipulated facts show that when the crushing season starts defendant's operations are a continuous processing of the fresh grapes that cannot be halted at any point prior to completion. To choose one of the early steps in such continuous process and say this and no more constitutes first processing would be arbitrary and unwarranted.

However, the fact that defendant's activities involved herein are first processing does not mean that the Section 7(c) exemption may be taken at any time during the year. It does not exempt industries from the overtime provisions of the Act but only the specific processes therein mentioned. Fleming v. Swift & Co., D.C., 41 F.Supp. 825, affirmed in Walling v. Swift & Co., 7 Cir., 131 F.2d 249. Thus it can be taken only during the "crushing season" when first processing is being carried on. During that season it will be applicable not only to employees actually engaged in first processing operations but to those whose work is incidental and necessary thereto. Walling v. Swift & Co., 7 Cir., 131 F.2d 249, supra; Heaburg v. Independent Oil Mill, Inc., D.C., 46 F.Supp. 751. This is important in view of the fact that in 1939 defendant used some white wine along with its other distilling material. Distilling brandy from completely processed wine is not the first processing of fresh fruit but since the brandy so distilled was used solely for fortifying wine it was clearly an operation incidental and necessary to defendant's exempt operations and thus fell within the exemption.

Section 7(b) (3), exempting from maximum hour provisions seasonal industries, is not limited to the crushing season. It may be taken at any time during the year and is applicable to all employees. 2 C.C.H. Labor Law Service, p. 33,071. The only requirement is a finding by the Administrator that the industry, or branch of any industry, is of a seasonal nature. Since the Administrator has found that the first processing of perishable or seasonal fresh fruits is a branch of an industry and of a seasonal nature within the meaning of the Act, and since the court finds that defendant's operations constitute such first processing, it follows that defendant is entitled to apply this exemption to all of its employees and at any period of the year.

The court therefore finds that the exemptions provided for by Sections 7(c) and 7(b) (3) of the Act have been properly taken and that plaintiff is not entitled to overtime payment as prayed. Judgment will be entered, accordingly, in favor of the defendant, upon findings of fact and conclusions of law. The respective parties will pay their own costs.