## WALLING v. DE SOTO CREAMERY & PRODUCE CO.

### Civ. No. 162.

District Court, D. Minnesota,
Sixth Division.

April 27, 1943.

James M. Miller, Regional Atty., U. S. Department of Labor, of Minneapolis, Minn., and Victor E. Anderson, U. S. Atty., of St. Paul, Minn., for plaintiff.

Samuel J. Levy, of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

The above entitled action came on for trial before the undersigned judge of this court September 15, 1942, at Minneapolis, Minnesota. Thereafter briefs were submitted on behalf of the parties and oral argument had on April 27, 1943.

Upon the evidence, the files and records in the case, the briefs and arguments of counsel, and on due consideration, the court makes the following findings of fact, conclusions of law, and order for judgment.

Findings of Fact.

1. A substantial portion of the facts herein having been stipulated between the parties, the same being introduced in evidence as plaintiff's Exhibit 1, and being read into the record, the court adopts the same as hereinafter set forth, and finds as a fact:

2. "III. That the defendant, De Soto Creamery and Produce Company, is a Minnesota corporation having its principal office and place of business at 71 Island Avenue West, Minneapolis, Minnesota; and that it does now operate or has in the past operated branch offices, places of business, and manufacturing plants in Fergus Falls, Morris, St. Cloud, Austin and Benson, all of the state of Minnesota, and in Mobridge and Webster, South Dakota, and in Grafton and Fargo, North Dakota, and elsewhere in the States of Minnesota, South Dakota, North Dakota and Wisconsin; and is, and at all times hereinafter mentioned was, engaged at said places of business in the production, sale, and distribution of eggs and dressed poultry. .

3. "IV. That substantially all of said goods produced since October 24, 1938, at the above named places of business have been and are being produced for interstate commerce, and that a substantial part of said goods have been and are being shipped in interstate commerce from said branch plants in Minnesota, North Dakota, and South Dakota, to, into and through States other than the States of Minnesota, North Dakota and South Dakota.

4. "V. That substantially all employees employed by the above named defendant since October 24, 1938, at the above named branch places of business are and had been engaged at all times during his or her employment in interstate commerce or in the production of goods for interstate commerce within the meaning of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., hereinafter referred to as the Act.

5. "VI. That in the operation of its various business establishments, as described above, the defendant has employed several hundred employees, more or less, in and about said places of business, in various activities including office and clerical activities, truck driving, egg candling, buying, handling, feeding, slaughtering, and picking of poultry, janitor work, box making, egg case making, and night watching.

6. "VII. That with respect to those persons employed in the performance of office and clerical duties in interstate commerce and necessary to the production of said goods for interstate commerce, the defendant, between October 24, 1938 and the date of the commencement of this action, employed many of said employees for workweeks longer than 44 hours, 42 hours and 40 hours, during the applicable periods under the Act, and did not, as required by Section 7 of the Act, compensate them for such excess hours at time and one-half their regular rates of pay; and that, in fact, defendant paid said employees their regular straight time wages only for those work weeks in which said employees worked said excess hours.

7. "VIII. That the defendant, between October 24, 1938 and the date of the commencement of this action, did not make, keep and preserve records, as required by

Section 11(c) of the Act and Regulations, Part 516, thereunder, showing the hours worked each workday and each workweek by many of said office and clerical employees; and that, in fact, the defendant made, or caused to be made, upon its records false entries purporting to show the hours worked each week by many of said employees, and in many cases said false entries falsely indicated that said employees had not worked in excess of the maxima permitted by the Act.

8. "IX. That the defendant did not make, keep and preserve records showing the true regular rate of pay for many of said office and clerical employees, or the true weekly straight time and overtime earnings of many of said office and clerical employees, as required by Section 11(c) of the Act and Regulations, Part 516 thereunder; and that, in fact, defendant made or caused to be made upon its records false entries purported to represent the true regular rate of pay and the true weekly straight time and overtime earnings of many of said employees.

9. "X. That with respect to the large number of employees employed as poultry pickers by the defendant in its various establishments, the defendant, between October 24, 1938 and the date of the commencement of this action, compensated many of such employees at piece rates, paying each so much per bird picked. Said piece rates were such that many of the defendant's employees engaged in picking poultry, and compensated on that basis, were unable between October 24, 1938 and October 24, 1939, to earn 25¢ per hour, and were unable since October 24, 1939 to earn 30¢ per hour. Said employees received from the defendant only their piece rate earnings and were not paid anything in addition thereto; and the defendant, as a result thereof, has thus paid many of said employees wages at rates less than the minimum rates specified by the Act.

10. "XI. That the defendant did not make, keep and preserve true records of the hours worked each day and each workweek by many of said piece rates poultry pickers, and, in fact, made or caused to be made upon its records false entries, purporting to show the hours worked each workweek by many of said employees.

11. "XII. That with respect to employees employed by the defendant in its various branch plants in such occupations as general warehouse work, egg case making, night watching, and janitor work, the defendant, between October 24, 1938, and the date of the commencement of this action, employed many of said employees for workweeks in excess of 44, 42 and 40 hours during the respective periods provided by the Act; and the defendant did not pay many of said employees for all such excess hours at time and one-half said employees' regular rates of pay, but instead paid them at their regular straight time rates only for their work in said workweeks.

12. "XIII. That the defendant has not kept true records of the hours worked each day and each workweek by many of said employees engaged as set forth in the previous paragraph; and, in fact, that the defendant has made or caused to be made in its records false entries as to the hours worked by many of said employees during each day and each workweek.

13. "XIV. That with respect to employees employed as truck drivers in and about the defendant's various branch plants, the defendant, between October 24, 1939 and the date of the commencement of this action, compensated some of said employees upon the basis of a weekly salary, and defendant failed to pay said truck drivers not less than 30¢ per hour for all hours worked.

14. "XV. That the defendant did not keep true records of the hours worked each day and each workweek by said employees, but instead made, or caused to be made, in its records, false entries purporting to represent the hours worked each day and each workweek by said truck drivers.

15. "XVI. That the defendant has, from each of the defendant's establishments, regularly and continuously shipped, delivered or sold in commerce, or shipped, delivered or sold with knowledge, that shipment, delivery or sale thereof in commerce was intended, goods produced by employees employed in violation of Section 6 or Section 7, or both, as above set forth."

16. The evidence offered further raised the question of the applicability of the Act to the following classes of employees performing the duties hereinafter described, whom defendant contends were partially or wholly exempt under Section 7(c) or Section 13(b) (1) of the Act, or both.

A. Truck Driver-Buyers:

The principal duties of each of these employees consist of driving a truck throughout the countryside and towns and villages surrounding defendant's places of

business to buy, collect, load, handle and transport to the branch whereat they are employed, eggs and live poultry obtained from farmers, buying stations and independent stations.

At some of its establishments defendant compensates some of the persons so employed at hourly rates, and persons so paid are conceded to be employees. At others, said persons drive company owned trucks on a commission basis and are conceded to be employees. At the St. Cloud branch a commission is paid a driver based on the amount of goods purchased, the drivers having title, subject to a chattel mortgage held by the defendant, to the trucks which they use and maintain. No difference appears in the methods of purchase or delivery whether the company trucks or their own are used by the buyer driver. Irrespective of whose truck is used, the buyer driver exercises his own discretion in determining when he is to cover the route and the order of his calls, though in any event the defendant supplies the cash for the making of purchases or advances. The company bonds all drivers and all advances and purchases are made in the defendant's name, using receipts on which same is printed. The defendant fixes the price to be paid for the goods as well as the commission paid the buyer driver. All of the buyer driver's time is devoted to defendant's business. When not engaged in driving the trucks, these drivers are employed in some other part of the establishment at hourly rates of pay. It appears also that the defendant pays for produce dealer's license held by each buyer driver and necessary before the purchase of produce can be made. All equipment except the truck, such as coops, scales, crates, and the like, are furnished by the company. At no time do such individuals purchase goods on their own behalf to be resold to the defendant.

The work of the buyer driver in its very nature is so related to the business of the employer that it may be regarded as dependent upon it, so much so that it cannot be regarded as an independent calling, or the buyer driver held to be an independent contractor. The buyer driver is in business because of the employer being in the same business and fostering his activities therein. None of said buyer drivers cross state lines in the course of their work, nor do they carry goods in transit interstate to or from a railroad, truck terminal or point of interchange. At the time they handle the poultry and eggs, there is no known destination for same outside the state. The drivers handle eggs as well as poultry in each workweek throughout the year.

Said buyer drivers have in many weeks throughout the year been employed by the defendant more than 44, 42 or 40 hours during applicable periods under the Act and have not been paid time and one-half their regular rate of pay for such excess hours.

B. Packers, Graders and Loaders:

After the poultry has been killed and dressed by removing the feathers and washing the carcass, it is hung on racks and moved into the cooler, a refrigerated room separate and apart from that in which the dressing operations were performed. There the poultry is cooled for at least 24 hours to remove body heat. The birds are then examined by the grader as to size, weight, color, condition of the skin and the like, and are placed by him in separate bins according to grade and weight. They are then removed from the bins and packed in boxes by the packer. After the box is fastened, the poultry is loaded into trucks or railway cars for delivery to market. This may be performed by a loader, but is usually done by the grader and packers as part of their work requiring one to three hours each day. They also load eggs for shipment in each week throughout the year. These operations do not in any way change the appearance or condition of the dressed poultry by adding to or taking anything away from the carcass itself, and do not constitute part of the dressing thereof.

For at least 14 workweeks in each year, claimed by the defendant as exempt under Section 7(c) of the Act, said employees have worked longer than 44, 42 or 40 hours during applicable periods under the Act and have not been compensated for such excess hours at time and one-half their regular rates of pay.

17. At least one man was employed at defendant's St. Cloud branch with duties consisting in part of drying feathers by mechanical means, which feathers are thereafter shipped in interstate commerce. This is not a part of the dressing operations previously performed upon the poultry. In workweeks when so engaged, he was not compensated at time and one-half his regular rate of pay for hours which he worked in excess of the maxima permit-

ted by the Act at straight time, the defendant claiming that such operations were exempt.

18. The defendant was engaged in commerce and the production of goods for commerce at its principal place of business in Minneapolis, Minnesota. A janitor whose duty it was to clean the defendant's entire system was suffered and permitted by the defendant to work more than 44, 42 or 40 hours per week during applicable periods under the Act, and was not compensated for such excess hours at time and one-half his regular rate of pay, and the defendant also failed to keep, make and preserve accurate records of his hours of work. He was employed in a process or occupation necessary to the production of goods for commerce by the defendant.

19. A shipping clerk whose duties included shipping goods to other states was employed by defendant at its Minneapolis, Minnesota, plant and was not compensated at time and one-half his regular rate of pay for hours worked in excess of 44, 42 and 40 per week during applicable periods under the Act.

Conclusions of Law

1. The Court has jurisdiction of the parties hereto and of the subject matter of this cause.

2. The court has jurisdiction to restrain violations of Section 15 of the Act by virtue of the provisions of Section 17 of the Fair Labor Standards Act, hereinafter referred to as the "Act."

3. Those persons employed as buyer drivers are "employees" of the defendant within the meaning of the Act and are not independent contractors.

4. Said buyer drivers are not within the scope of the exemption provided by Section 13(b) (1) of the Act because they are not engaged in interstate transportation within the coverage of the Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq. They are, however, covered by the provisions of the Fair Labor Standards Act because they are engaged in processes and occupations necessary to the production of goods for commerce, and are, therefore, engaged in the production of goods for commerce as defined in said Act.

5. Said buyer drivers are not within the scope of the exemption from Section 7 (a) of the Act provided by Section 7 (c) for 14 workweeks in the year because in

every week they handled eggs which are merely candled, graded and packed by the defendant but not otherwise processed, which operation does not constitute "first processing * * * of any agricultural or horticultural commodity during seasonal operations" within the meaning of said section. Engaging in both exempt and nonexempt operations in the same workweek renders the employee nonexempt for the entire week.

6. Those persons employed as graders, packers and loaders and feather dryers are not within the scope of the exemption from Section 7(a) of the Act provided by Section 7(c) for 14 workweeks in the year because said Section 7(c) does not provide an industry exemption but only an exemption for those employees engaged in the specified operations (in this case "handling, slaughtering, or dressing poultry"), and because those operations have already been completed when the poultry has been killed, bled, picked and washed, and cease when the poultry enters the cooler, and because grading, packing and loading are not performed in "any place of employment where he [the employer] is so engaged," to-wit, the killing and picking room, and because the operations of grading, packing and loading dressed poultry carcasses do not fall within the exempt terms.

7. Said graders, packers and loaders are also nonexempt under Section 7(c) for the further reason set forth in conclusion number 5 above.

8. By failing to compensate employees at not less than 25¢ per hour between October 24, 1938 and October 24, 1939, and at not less than 30¢ per hour from and after October 24, 1939, the defendant has violated Sections 6 and 15(a) (2) of the Act.

9. By employing employees for workweeks in excess of 44 hours between October 24, 1938 and October 24, 1939, and in excess of 42 hours between October 24, 1939 and October 24, 1940, and in excess of 40 hours since October 24, 1940, as set forth above, without paying to said employees time and one-half their regular rates of pay, the defendant has violated the provisions of Sections 7 and 15(a) (2) of the Act.

10. By failing to keep true records of the hours worked each work day and each workweek by each of its employees, and by making or causing to be made arbitrary,

fictitious and false entries, purporting to reflect the hours worked each day and each workweek by each of its employees, the regular rate of pay, the regular straight time earnings, and the additional overtime earnings of many of its employees as above stated, the defendant has violated the provisions of Sections 11(c) and 15(a) (5) of the Act.

11. By shipping, delivering or selling in commerce, or shipping, delivering, or selling with knowledge that shipment or delivery or sale in commerce is intended, goods produced by employees employed in violation of Section 6 or Section 7, or both, as set forth above, the defendant has violated the provisions of Section 15(a) (1) of the Act.

Wherefore, plaintiff has shown cause for the issuance of a judgment enjoining and restraining violation of Section 15 of the Act.

A judgment may be entered accordingly.