**WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor, v. PEACOCK CORPORATION.**

Civil Action No. 689.

District Court, E. D. Wisconsin.
July 23, 1943.

Victor M. Harding, Jr., of Department of Labor, of Milwaukee, Wis., for plaintiff.

Kadwit & Lepp, of Kenosha, Wis., for defendant.

DUFFY, District Judge.

Plaintiff seeks an injunction to restrain the defendant from violating the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq.

The defendant is engaged in buying, storing, selling, and dealing in onion sets and its office and plant is located adjacent to a sidetrack of the Chicago and North Shore Railroad at Berryville in a rural section of Kenosha County, Wisconsin. Selling both at wholesale and retail, its business has been national in scope. Most onion sets are sold from January 15 to April 15 in each year for spring planting, during which time defendant has as many as 65 employees. During the balance of the year the number of employees varies from 8 to 15.

Defendant admits that it has not complied with the minimum wage requirements of the act and that it has not paid overtime. It claims exemption from the act because of (1) the provision exempting employees employed in agriculture, Sec. 13 (a) (6); (2) the provision exempting employees employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, drying, preparing in their raw and natural state agricultural commodities for market, Sec. 13(a) (10); and (3) the provision exempting employees engaged in the first processing, within the area of production (as defined by the Administrator), of any agricultural commodity during seasonal operations during a period or periods of not more than fourteen work-weeks in the aggregate in any calendar year, Sec. 7(c).

The burden is on the defendant to show that it is plainly within the terms of any of the exemptions. A detailed examination of the facts is required.

Defendant's Berryville plant consists of an onion set warehouse, mill, and seed store. The defendant does not own any farm lands and does not grow onion sets or other crops. However, C. R. Peacock, who owns practically all of the capital stock of the defendant corporation and manages its affairs, is similarly the owner of the stock of the National Onion Set Corporation and is its manager. The latter corporation does own farm lands and raises onion sets which are handled at the Berryville plant. During the last four years, 37% to 100% of the onion sets han-

dled at the defendant's plant have been obtained from independent growers, and the balance came from the National Onion Set Corporation. Mr. Peacock has operated the Berryville plant since 1932. At first nearly all of its onion sets were obtained from independent growers. Farm lands were first purchased by the National Onion Set Corporation in 1939. Although there was a local onion set crop failure in 1939, over 47,000 bushels of onion sets were handled, milled, or processed by defendant in the following milling season, which was almost twice the amount handled in the previous year.

The onion set is raised from onion seed which are planted close together in the early spring. When they have reached the stage of a small bulb up to about 1" in diameter, they are pulled and topped; they are then placed in large crates on the field where they are permitted to dry; thereafter they are placed in warehouses to be kept during the winter months. If the sets have not been cleaned they must be put through milling operations where all dirt and other material adhering to them is blown away. They are then placed on a conveyor where they are graded as to size and color and placed in bags or other containers.

All persons working at the Berryville plant are employed by the defendant. The employees are engaged in various tasks: some place onion sets in flat crates and stack them in tiers in the warehouse; others are engaged in moving the onion sets from the warehouse to the hopper in the mill; others operate the milling machinery or work at the conveyor where sprouts and defective sets are removed; others package or bag the sets as they come off the conveyor; still others are engaged in loading onion sets or refrigerator cars or trucks preparatory to their being shipped out to customers.

The soil in the southeastern corner of Wisconsin and in parts of Cook County, Illinois, is particularly well adapted for the raising of onions and onion sets. The area in Wisconsin extends about ten miles north, west, and south of the Berryville plant. The area in Illinois is in the vicinity of Morton Grove, Des Plaines and South Holland, all in Cook County. Thirty to forty miles of land where onion sets are not grown separate the Wisconsin and Illinois areas.

The percentage of onion sets obtained by defendant from Cook County varies from year to year; for example, 32% were obtained in 1939, 58% in 1940, 35% in 1941, and 20% in 1942. Defendant also obtains some onion sets from Colorado; 5% of its sets in 1941, and 35% in 1942, came from there.

Most of the onion sets purchased from others than the National Onion Set Corporation were purchased on the basis of having been cleaned and sorted, and milling was not required in order for them to be clean. However, these onion sets are often milled in order to grade them and the conveyor used for convenience in bagging and packaging. For instance a load of onion sets from Colorado hauled by Creuziger were run through the mill and packed in two-bushel bags.

■ The Fair Labor Standards Act is remedial and must be liberally construed to effectuate its purposes. Missel v. Overnight Motor Transportation Co., 4 Cir., 126 F.2d 98, 103, affirmed 316 U.S. 572, 62 S. Ct. 1216, 86 L.Ed. 1682; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52, 56. The same liberality of construction should be applied to the regulations promulgated to effectuate the act: Ralph Knight, Inc. v. Mantel, 8 Cir., 135 F.2d 514, 517. The exemptions must be strictly construed. International Longshoremen's Ass'n v. National Terminals Corporation, D.C., 50 F.Supp. 26, 27; Fleming v. Hawkeye Pearl Button Co., supra.

■ Defendant's first defense is based on the exemption provided in Sec. 13(a) (6): "The provisions of sections 6 and 7 shall not apply with respect to * * * any employee employed in agriculture." Defendant has cited a number of authorities defining the word "agriculture." These citations refer to other legislation and are not controlling because the act itself defines the term. Sec. 3(f) provides: " 'Agriculture' includes farming in all its branches and among other things includes * * * the production, cultivation, growing, and harvesting of any agricultural * * * commodities * * * and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." It will be noted that for the purposes of this act the term "agricul-

ture" means "farming", including any practices performed by a farmer, or on a farm, incidental to such farming. Where an employer's business regularly involves the handling of commodities grown by others, those activities are not a practice incidental to farming, even though the handling and processing of his own grown commodities would be incidental to his farming operations. Bowie v. Gonzales, 1 Cir., 117 F.2d 11; Jordan v. Stark Brothers Nurseries & Orchards Co., Inc., D.C., 45 F. Supp. 769. The administrator has published interpretive bulletins which are entitled to receive great weight from the court. International Longshoremen's Ass'n v. National Terminals Corporation, supra; Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 552, 140 A.L.R. 1258. Interpretive Bulletin No. 14, Paragraph 10, provides in part: "When a farmer is engaged in these practices on agricultural * * * commodities grown on other farms as well as his own, * * * such operations do not seem to be incident to or in conjunction with his farming operations. In our opinion such operations assume the aspect of an independent business and do not fall within this exemption."

■ The defendant's plant is in no sense a farm. The defendant is not a grower. Most of the employees are doing work not requiring any skill or experience in farming. I conclude that the exemption aforementioned does not cover defendant's activities.

■ Defendant further contends that it is exempt under the provisions of Sec. 13 (a) (10): "The provisions of sections 6 and 7 shall not apply with respect to * * * any individual employed within the area of production (as defined by the Administrator), engaged in handling, packing, storing, * * * drying, preparing in their raw or natural state, * * * agricultural * * * commodities for market." The term "area of production" has been defined by the administrator, the applicable portions of which are: "An individual shall be regarded as employed in the 'area of production' within the meaning of Section 13(a) (10) * * * if he performs those operations on materials all of which come from farms in the general vicinity of the establishment where he is employed and the number of employees engaged in those operations in that establishment does not exceed ten." The administrator's definition specifies that the

materials worked on must all come from farms in the general vicinity of the establishment where the employee works. The court in Fleming v. Farmers Peanut Co., 5 Cir., 128 F.2d 404, 406, said: "* * * 'Vicinity' is some advance because it means nearness, neighborhood, that distance in which producers are neighbors. This may be a greater distance in sparsely settled regions than in thickly populated ones. It excludes distance beyond the range of usual farm travel."

■ It is apparent that "area of production" may vary according to the particular commodity and the particular section of the country. Construing the exemption strictly, I conclude that the area in Cook County, Illinois, is not the same area of production as that in Racine and Kenosha Counties, Wisconsin, surrounding the Berryville plan. Furthermore, the customary purchases by defendant of onion sets from the State of Colorado would in itself render the exemption inapplicable.

■ Another reason why the exemption cannot be allowed is that under Sec. 13(a) (10), the defendant's employees must be exclusively engaged "in handling, packing, * * * drying" the defendant's onion sets "for market." Many of the defendant's employees have other or further duties. They devote part of their time to the activity which is exempt and the balance of their time to a non-exempt operation.

■ Defendant's third claim for exemption under Sec. 7(c) extends only to the overtime provisions in Sec. 7(a). Under Sec. 7(c) the defendant claims to be entitled to a fourteen workweek exemption because of the seasonal nature of its operations. Sec. 7(c) is applicable only for certain narrowly restricted operations, the only one of which the defendant can claim is the "first processing, within the area of production * * * of any agricultural * * * commodity during seasonal operations." We have already discussed the term "area of production." The defendant undoubtedly could obtain a partial exemption under Sec. 7 by making application to the administrator. Apparently this has not been done. In any event it is not a defense in this suit.

■ As it is admitted the minimum wage and overtime provisions have not been complied with, an injunction may issue.