McCOMB v. DEL VALLE et al.

**Civ. No. 4597.**

United States District Court
D. Puerto Rico, San Juan Division.

Nov. 10, 1948.

946

Kenneth P. Montgomery, Regional Atty., U. S. Dept. of Labor, of Santurce, Puerto Rico, for plaintiff.

Fiddler, Gonzalez & Nido, of San Juan, Puerto Rico, for defendants.

CHAVEZ, District Judge.

This is an action brought under Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201, et seq.

The Administrator of the Wage and Hour Division, United States Department of Labor alleges violations of the overtime compensation provisions of the Act with respect to certain employees of defendants. Defendants have admitted that their employees are engaged in work which is within the general scope of the Act, but they claim that they are paying all their employees the overtime compensation required by the Statute, except as to those employees exempted therefrom by the specific provisions of Section 7(c) of the Act, Title 29 U.S.C.A. § 207(c).

Thus, the problem with which this case is concerned is the scope of an exemption contained in said Section 7(c) of the Act. This exemption provides that in the case of an employer engaged " * * * in the processing of * * * sugar-cane * * * into sugar (but not refined sugar) or into syrup," the overtime compensation requirements of the Act shall not apply "to his employees in any place of employment where he is so engaged."

It is the contention of the plaintiff that certain of defendants' workers, employed in warehouses and in the handling of sugar and molasses, are not engaged in the "processing of sugar cane" and are not employed in a place of employment where their employer is so engaged, and, therefore, are entitled to the benefits of the overtime provisions of the Act. On the contrary, defendants assert that these employees are within the exemption mentioned above.

The facts as stipulated by the parties are as follows:

I. The defendants are trustees doing business under a certain declaration of trust executed in Baltimore, Md., on January 16, 1934, and they are doing business collectively in Puerto Rico as "Eastern Sugar Associates (a Trust)".

II. The defendants maintain a general office in the city of Caguas, in Puerto Rico; defendants are engaged in growing sugar cane on lands owned and leased by them in the Island of Puerto Rico; defendants own and operate a railroad line which is used to transport sugar cane to defendants' sugar mills and to transport processed sugar and molasses from the sugar mills to ports and warehouses; defendants own and maintain warehouses, tanks, and other storage facilities for raw sugar and molasses.

III. Defendants own and operate four factories or sugar mills, to wit: Central Santa Juana, located in the Municipality of Caguas; Central Cayey, located in the Municipality of Cayey; Central Juncos, located in the Municipality of Juncos; and Central Pasto Viejo, located in the Municipality of Humacao. The location of these factories or mills with relation to each other and to other properties and facilities herein referred to is shown on the map attached hereto and designated as Exhibit "A".

IV. Storage Facilities at Central Santa Juana: Defendants own and operate two warehouse buildings, Nos. 1 and 2, constructed in 1944, with a storage capacity of about 100,000 (250 pounds) bags of sugar each, and one molasses tank with a capacity of 375,000 gallons, located on the premises of Central Santa Juana. These warehouses are about 25 feet apart and are approximately 150 feet and 420 feet, respectively, from the mill building. A road used for hauling cane to the mill separates them from the factory building.

Storage Facilities at Central Juncos: Defendants own and operate four warehouses adjacent to the sugar mill at the Central Juncos. Two of these warehouses are old and two are new. The older warehouses are designated as Nos. 1 and 2 and have

capacities respectively of 15,000 and 35,000 bags. These warehouses are annexed to the mill building and the sugar bin under which sugar is weighed and bagged is located within and between the two warehouses.

Of the two new warehouses, one is designated as P-5 and has a total capacity of 110,000 bags and is located about 200 ft. from the factory and connected by railroad and road. The other, known as the tractor shop warehouse, has a capacity of 48,400 bags, is located at about the same distance as the other and is connected by railroad track and road.

Also at Central Juncos there are six molasses tanks aggregating about 1,800,000 gallons capacity.

Storage Facilities at Defensa: Until the termination of the 1946 grinding season, defendants owned and operated three warehouse buildings and molasses tank with a 500,000-gallon capacity, located in the Municipality of Caguas, which were known collectively as the "Defensa" site. These warehouses were constructed many years ago. Warehouse No. 1 had a capacity of 100,000 bags; warehouse No. 2 had a capacity of 4,000 bags, and warehouse No. 3 had a capacity of 6,000 bags. These warehouses were used chiefly to store sugar and molasses produced at defendants' Central Cayey.

As of the grinding crop of 1947, the Defensa sugar warehouses have been discarded and storage of sugar there has been discontinued.

Central Cayey: Defendants have no sugar warehouses at the factory site in Central Cayey. Molasses tank capacity is 100,000 gallons. Raw sugar produced at said mill is transported by truck as and when produced, and formerly was stored temporarily in defendants' warehouses at Defensa, and from there transported by rail to warehouses at Humacao Playa or directly by truck to dock in San Juan. Since 1946, the sugar is either taken by truck directly to San Juan, for shipment, or to Central Santa Juana for storage there.

Central Pasto Viejo: Defendants neither own nor operate sugar warehouse facilities at Central Pasto Viejo, and all sugar is there loaded directly into railroad cars from a bin and then is transported directly by rail to defendants' warehouses at La Playa Humacao.

On the premises at Central Pasto Viejo are three molasses tanks, two of about 35,000-gallon capacity each, and one of approximately 56,000-gallon capacity, in which defendants temporarily accumulate molasses to be transported by rail to the Humacao Playa tanks.

Storage Facilities at Humacao Playa: Defendants own and operate five warehouses at Humacao Playa. Warehouse No. P-1 has a capacity of 140,000 bags; warehouse No. P-2 has a capacity of 70,000 bags; warehouse No. P-3 has a capacity of 100,000 bags; warehouse No. P-5 has a capacity of 70,000 bags, and warehouse No. P-6 has a capacity of 70,000 bags.

Warehouses designated P-1 and P-2 are close to the pier at the Playa. Insular Highway No. 3 separates warehouses Nos. P-3 and P-6 from the other warehouses. Also located at La Playa are four tanks for the storage of molasses, with respective approximate capacities of 950,000 gallons, 220,000 gallons, 900,000 gallons, and 940,000 gallons.

The location of all of the above warehouses and tanks with respect to each of the mill buildings at the different points, and the location of each of the Playa warehouses and tanks, and of those at the Defensa Site (now abandoned), and its railroad connections with the pier, which is owned and operated by the defendants, are shown on maps which are attached hereto and designated respectively exhibits B, C, D, E, F and G.

V. Until the year 1944, when sufficient sugar storage facilities were added at Centrals Santa Juana and Juncos, part of the raw sugar produced at said Centrals was stored in the warehouses located at La Playa pending shipment to the United States or was shipped directly upon arrival there if a ship was in port. The warehouses and tanks located at Playa Humacao are separated from the respective factory premises of the four sugar mills owned

and operated by defendants by distances varying from 4 to 70 kilometers as is indicated by the map attached hereto and designated Exhibit A.

VI. At the sugar mills located as above set forth, the defendants grind, in addition to cane owned by them and produced on lands owned or leased by them, sugar cane grown by and belonging to other farmers known as "colonos". Defendants do not purchase the sugar cane from any colonos but grind such sugar cane entirely on a toll basis. The cane of the respective colonos and the juice therefrom are weighed and tested for sugar content separately and apart from the cane and juices of defendants, but all the sugar produced therefrom is commingled and the number of bags pertaining to the respective colonos is delivered to them upon their demand or is held in defendants' warehouses until sold by or on behalf of said colonos and thus delivered in interstate commerce. Sugar is a fungible commodity. Molasses produced at defendants' mills is marketed by the defendants and the colonos are paid part of the net proceeds thereof depending on the tonnage of the cane produced and ground by them.

VII. Batey facilities for the storing of molasses at each mill are not adequate to provide storage for all molasses there produced. Molasses produced at defendants' sugar mills is transferred from temporary tanks by rail to La Playa Humacao and there stored in tanks pending shipment to the United States. It is pumped from these tanks into barges for shipment upon arrival of steamers. The molasses produced is a by-product of the sugar cane ground at the several mills and represents the commingled product of the cane belonging to the colonos and the cane belonging to the defendants.

VIII. Because the port at Humacao Playa is shallow, sugar and molasses are loaded into barges and transferred to ships which anchor at some distance from the pier. Sugar is transported from the warehouses at La Playa or from the mills, when a ship is in port, directly to the pier in railroad cars.

IX. In each of defendants' several mills, sugar cane is converted into raw sugar in the following manner:

Administration and colono cane is received at the mills by large or small railroad cars and trucks on which the weight of the cane is taken. The cane is then transferred either by means of hoists or dumps into a cane conveyor which carries it to the milling tandem, which generally consists of two sets of revolving knives, a two-mill crusher and four or five three-roller mills. The juice extracted by the mills is limed to slight alcalinity, weighed and passed through heaters, where its temperature is raised to slightly over 212°F, and pumped into Dorr clarifiers. The clear, negotiable liquor extracted from the Dorr clarifiers is concentrated into multiple-effect evaporators to about 65 Brix. The muddy juice collected at the bottom of the clarifiers is sent to Oliver filters or filter presses where the clear juice is filtered, and the mud or "cachaza" separated therefrom. The bagasse resulting from the crushing of the cane by the milling tandem is taken by means of conveyors to the boiler plant furnaces where it is burned for fuel.

The concentrated clarified juice from the evaporators, known as syrup, is crystallized under vacuum in vacuum pans and the cystals formed are allowed to grow at the expense of the mother liquor or syrup until the pan is filled. The massecuite or mixture of molasses and crystals is concentrated, discharged from the pan into a mixer from where it is dropped into centrifugal machines which separate the crystals from the molasses. Molasses resulting from the first extraction are known as first molasses. These are used to produce second massecuites, which in turn yield raw sugar and second molasses. Second molasses are worked into what are known as third or final massecuites, which are cooled in closed or open crystalizers to permit the crystals to grow at the expense of the mother liquor about them. These massecuites are centrifuged in what are known as low grade centrifugals producing low grade sugars and blackstrap molasses, which constitute the main by-product of the raw sugar industry. The

third sugars are commingled with syrups and the artificial massecuite thus mixed is generally used as a footing for the boiling of first grade massecuites.

The crystals of centrifugal sugar testing slightly over 96° Pol. are dropped from the centrifugal baskets into scroll conveyors, lifted by means of bucket elevators into bins from which sugar is weighed and dropped into jute bags containing approximately 250 pounds, net, of raw sugar. The filled bag is then dropped on a conveyor which carries it through a sewing machine where it is sewn. As soon as it has been closed it is discharged into an elevator which drops it into either a railroad car or dump truck. It is then moved by rail or truck to far away or nearby warehouses, as the available storage space may require. Upon reaching its destination the bagpile in the railroad car or truck is broken, the bag is placed on a hand-cart and moved to the storage place where it is stacked entirely by hand or by means of a stacking machine. When the sugar is conveyed in dump trucks, it is dumped on the floor of the warehouse and carted to the conveyor or elevator for stacking. This completes the process.

X. Defendants had the storage capacities and produced the amounts of raw sugar and molasses, respectively, which appear in exhibits H and I attached hereto, at each of their four Centrals during the 1942, 1943, 1944, 1945, 1946 and 1947 grinding seasons.

XI. No equipment or facilities physically devoted to the actual conversion of sugar cane into raw sugar and molasses are maintained in any of defendants' warehouses or on the premises of the defendants at Playa of Humacao.

XII. Some of defendants' employees engaged at Defensa and in or about defendants' warehouses and tanks at Playa Humacao and at Centrals Santa Juana, Juncos, Pasto Viejo, and Cayey, and on defendants' privately owned railroad during the "zafra" or grinding season work in excess of 40 hours per week and are paid at the regular rate per hour for all hours worked in any workweek, no overtime compensation at rates of not less than one and one-half times their regular rates of pay being paid to said employees during the said grinding season for the hours worked by them in excess of 40 hours in any workweek.

The Court finds that sugar belonging to colonos is stored free at defendants' warehouses each year until the month of December and if by December 31, of each year, the sugar belonging to the colonos is not removed from said warehouses, then defendant charges said colonos 2¢ per bag, bi-weekly, as determined by the Secretary of Agriculture. Defendants' regular employees performed all stacking of bagged sugar.

The defendant contends that the processing of sugar cane into sugar and syrup under Sec. 7(c) of the Fair Labor Standards Act of 1938 continues until the sugar and syrup has been placed in warehouses or tanks from which they are to be taken out for shipment in the course of commerce, regardless of the distance of the warehouses or tanks from the plant where the cane is ground and the juice converted into sugar and molasses, and argues that since the Administrator has ruled that truck drivers who carry raw materials to the establishments or who transport goods upon which the exempt operation has been performed may be considered as working in the "place of employment", the Administrator by so ruling has eliminated the element of distance. Sec. 22, Interpretative Bulletin No. 14, U.S.Department of Labor, December 1940.

In this section the Administrator ruled that the truck drivers were considered as working at the place of employment because they make regular recurring trips to and from the establishment and may be deemed attached thereto and further that some of their work, such as loading and unloading takes place in the establishment.

The Court cannot agree with this view. Some of the factories or mills of defendants have storage facilities for both sugar and molasses within a reasonable proximity of the factory or sugar mill. I lean towards the view of Judge Metzger in Waialua Agricultural Co. v. Ciraco Manega, D.C., 77 F.Supp. 480, 490, wherein the court said:

"(12) We have seen that this exemption to "processors" is separate and distinct from the exemption given to "agriculture"; it is a lesser and limited exemption. How far does it reach outside of the processing plant, or mill, in the case of sugar, if any distance? My opinion is that the Act was intended to reach to the produce to be dealt with after it is brought alongside its unloading platforms or delivered to it in its storage yard in which it has its own facilities, by gravity and mechanical traction, for bringing it into actual processing operations.

"From there on, Section 7(c) of the Act clearly exempts all acts that are involved in processing the cane into raw sugar, and I hold that this includes weighing, cleaning, crushing, juice treatments, crystallizing, and the bagging of the product and the removal of it from bagging and sewing machines and depositing it in an adjacent warehouse, bins, tanks, or directly into cars or trucks, if immediately available alongside the bagging room, for shipment. With these several operations through the factory the processing is begun and finished in the place where the processor is so engaged. Place where processing is carried on, conveys to my mind a meaning of the entire operating plant devoted to processing usage, whether within a building or open yard, and whether work there performed is mechanical or manual."

In this case the Administrator has conceded that warehouse employees at the Central Juncos are exempt from the provisions of the Fair Labor Standards Act under Sec. 7(c). Yet we see that the Juncos factory has four warehouses adjacent to the sugar mill. Two warehouses are old and two are new. The older warehouses have storage capacities respectively of 15,000 and 35,000 bags. These warehouses are annexed to the mill building and the sugar bin under which sugar is weighed and bagged and is located within and between the two warehouses. However, there are two new warehouses at Juncos, one having a capacity of 110,000 bags and the other 48,400 bags and both of these warehouses are located about 200 feet from the factory and connected by rail and road. Therefore, as the Court understands it the Government concedes that the employees in the two new warehouses are exempt under Sec. 7(c) despite their non-contiguity to the mill.

We now turn to the Santa Juana factory and we find that it contains two warehouses with a storage capacity of 100,000 (250 lb) bags of sugar each and one molasses tank with a capacity of 375,000 gallons. The warehouses are 25 feet apart and are approximately 150 and 420 feet, respectively from the mill building. A road used for hauling cane to the mill separates them from the factory building.

I cannot see the difference between an "adjacent warehouse", and a warehouse which is located, say 150 to 200 feet from the mill, or a warehouse located within reasonable proximity of a mill. The question arises as to the employees at the Santa Juana warehouses which are located on the mill premises but are aproximately 150 and 400 feet respectively from the mill.

If the employees at defendants' warehouses at Juncos located 200 feet from the mill come within the exemption of Sec. 7(c) certainly the employees in defendants' warehouses at Santa Juana located on the mill premises and where one warehouse is 150 feet from the mill and the other 400 feet from the mill, would be within the exemption, as to sugar processed at Central Santa Juana. However, the activities of these warehouses are not confined to Santa Juana sugar, but include the stacking and storing of Central Cayey sugar since 1946. Prior to 1946 sugar produced at Cayey was transported by truck as and when produced and formerly was stored temporarily in defendants' warehouses at Defensa, and from there transported by rail to warehouses at Humacao Playa or directly by truck to dock in San Juan. Since 1947 the Defensa sugar warehouses have been discarded and storage of sugar there has been discontinued.

The Government has conceded and the Court will rule that the defendants' employees at Juncos and Pasto Viejo are exempt under the provisions of Sec. 7(c) of the Act.

In Fleming v. Swift & Co., D.C., 41 F.Supp. 825, 831 the Court made the following conclusions of law among others:

"Sec. 7(c) of the Act does not exempt industries from the overtime provisions of the Act, but only the specific processes therein mentioned.

"The term 'place of employment' as used in Sec. 7(c) of the Fair Labor Standards Act means those portions of the plant devoted by the employer to the handling, slaughtering, or dressing of livestock as those terms are construed herein. In addition to the employees specified in conclusion of law No. 6, any employee whose employment during any workweek is wholly within the place of employment, as herein defined, and who during that workweek is working exclusively in an occupation which is a necessary part of the handling, slaughtering or dressing of livestock, also comes within the exemption of Sec. 7(c) of the Act."

In Walling v. Bridgeman-Russell Co.,[1] defendant was engaged in producing, selling and in the distribution of butter, ice cream, cottage cheese and condensed milk. It also slaughtered, dressed and distributed poultry: dealt in eggs, processed cheese, frosted foods, beer, meats and nonintoxicating beverages, and operated a public warehouse. The defendant employed persons in the manufacture of ice cream mix and ice cream. Most of the condensed milk used by the defendant was made in another department of its Duluth establishment but on occasions the defendant used condensed milk manufactured by others. The ice cream was produced by the addition of flavorings and other ingredients to ice mix which was then subjected to a freezing process. Some five million pounds of butter were manufactured annually, of which 300,000 pounds were produced at the Duluth establishment, the remainder being received from branch plants. With respect to the exemption contained in Sec. 7(c) of the act the Court held as follows: "the manufacture of ice cream mix and ice cream involves the further processing of dairy products made from milk, whey, skimmed milk, or cream, and the processing of a substantial quantity of other ingredients; consequently, employees engaged in the 'first processing' of milk, whey, skimmed milk, or cream within the meaning of Section 7(c) of the Act, but rather in a subsequent processing of milk, whey, skimmed milk, or cream and other ingredients."

"Sec. 7(c) does not exempt industries from the overtime provisions of the Act, but only the specific processes therein mentioned."

The term "place of employment" as used in Sec. 7(c) of the Act means those portions of an establishment devoted by the employer to "first processing operations".

As to the stacking and warehousing of any sugar produced at Cayey and stored at Defensa or at Santa Juana factories, the employees performing such work are not exempt under Sec. 7(c).

Workers exclusively handling and warehousing the sugar or molasses produced at the Juncos and Santa Juana factories are engaged in the "place of employment" where the defendants are engaged in the processing of sugar cane into raw sugar and molasses and I hold they are exempt under Sec. 7(c).

As to any workers performing both exempt and non-exempt work during the same work week, such workers are entitled to the maximum wage and overtime for all work performed. Weeks v. Postal Telegraph Co., (Okla.Com.Pleas Court) 1 W.H. Cases 1177; Walling v. Peacock Corp., D.C., 58 F.Supp. 880, North Shore Corporation v. Barnett et al., 5 Cir., 143 F.2d 172, certiorari denied 323 U.S. 679, 65 S.Ct. 275, 89 L.Ed. 551; Waialua Agricultural Co. v. Ciraco Maneja, D.C., 77 F.Supp. 480.

Therefore, an injunction will issue with respect to all Santa Juana employees who are engaged during the same work week in stacking and warehousing both sugar actually produced at Santa Juana and in stacking and warehousing sugar produced at the Cayey mill and brought to Santa Juana for storage.

As to the "Defensa" plant, the Court holds that as to molasses tank em-

---

[1] No opinion for publication.

ployees, injunction issue as prayed for in the complaint. Employees formerly employed there in stacking and warehousing sugar produced at Cayey were not exempt under Sec. 7(c) as it was not the place where the employer was engaged in the processing of sugar cane into raw sugar and molasses; however, as to sugar storage, the case is moot with respect to Defensa, as defendant has discontinued the storage of sugar at this site since 1947.

■ As to the Humacao Playa the facilities are more in the nature of storage for shipping purposes rather than storage incidental to processing. Humacao Playa does not count within its premises any equipment or facilities devoted to the processing of sugar cane into raw sugar and molasses. The facilities consist of one warehouse for the storage of sugar and tanks for the storage of syrup. Sugar and molasses of defendant and other colonos are stored therein and the Humacao Playa warehouse and storage tanks are very near the Humacao pier. Therefore, because Humacao Playa is not a place where the processing of sugar cane into raw sugar and molasses is carried on and no part of the operating plant or mill devoted to processing is on the premises or within a reasonable proximity of the processing plant, this court concludes and will follow the ruling in the Waialua case to the extent that the processing of sugar cane into raw sugar includes cleaning, juice treatments, crystallizing and the packing of the product and the removal of it from bagging machines and depositing it in a warehouse or warehouses located on the mill premises and within a reasonable proximity from the mill factory.

The Court holds that the workers employed at Humacao Playa are not exempt under Sec. 207(c), and that as to employees at Humacao Playa, injunction issue as prayed in the complaint requiring defendants to compensate such employees according to Sec. 207(a) (3).

■ The Court, therefore, concludes that employees who are exclusively engaged in the stacking and storing of sugar and tankage of molasses processed at the Juncos, Santa Juana and Pasto Viejo mills, that is, employees who stack the sugar and operate the molasses tank pumps in each respective mill are engaged in processing sugar cane into raw sugar and molasses and are, therefore, exempt under the provisions of Sec. 7(c) of the Act.

Upon the question of sugar cane belonging to colonos and processed in defendants' mills, it is sufficient to say that the point urged by plaintiff in its brief, evidently has been abandoned as plaintiff conceded that employees at the Juncos and Pasto Viejo plants are exempt under the provisions of Sec. 7(c) notwithstanding the fact that sugar cane belonging to colonos is ground and stored in the Juncos plant.

It is doubtful whether the ownership of the raw material processed has any bearing upon the question of exemption as the act does not speak of the ownership of the sugar cane or sugar but refers only to "the processing of sugar cane into sugar (but not refined sugar) or into syrup" and "to his employees in any place of employment where he is so engaged."