**John A. DOMENICO, doing business as Denver Vegetable Gardens, Appellants,**

**v.**

**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellee.**

**No. 5190.**

United States Court of Appeals Tenth Circuit.
March 19, 1956.

Rehearing Denied April 16, 1956.

Howard Roepnack, Arvada, Colo. (Patricia H. Maloy, Denver, Colo., on the brief), for appellant.

Reid Williams, Denver, Colo. (Stuart Rothman, Sol., Bessie Margolin, Asst. Sol., Sylvia S. Ellison and Harold S. Saxe, Attys. for U. S. Dept. of Labor, Washington, D. C., and Harper Barnes, Regional Atty., Kansas City, Mo., on the brief), for appellee.

Before BRATTON, Chief Judge, HUXMAN, Circuit Judge, and MELLOTT, District Judge.

HUXMAN, Circuit Judge.

The Secretary of Labor brought this action against John A. Domenico, doing business as Denver Vegetable Gardens, to enjoin alleged violations of the Fair Labor Standards Act.[1] The trial court made findings of fact and conclusions of law finding Domenico had violated provisions of the Act and based thereon entered judgment enjoining future violations.

Domenico is engaged in the purchasing, receiving, handling, production, packing, sale and distribution of fresh vegetables. He is primarily engaged in buying vegetables from farmers which have been raised in the Denver area. This produce is brought onto his premises in Denver in bulk or crude containers and is sorted, graded, prepared and packed and is then shipped in substantial quantities in interstate commerce. Domenico employs an average of fifteen workers throughout the year and during the peak of the vegetable season he employs approximately thirty or more workers. All of the employees whose compensation is challenged worked in excess of forty hours per week without the pay-

1. 29 U.S.C.A. § 201 et seq.

ment of overtime compensation as required by the Act.

In addition to these home grown vegetables Domenico during the peak vegetable season purchases for resale and distribution vegetables grown in the mountain areas some one hundred miles from Denver. Most of these have already been sorted, graded, packed and loaded in railroad cars, and the handling by Domenico's employees consists of a transfer of some of this produce from one car to another, reicing the cars and a repacking of broken crates. The court found that in 1952, a representative year, during the peak fourteen week season, from July 21 to November 1, Domenico handled one hundred forty-five cars of fresh vegetables. Of this number twenty were mountain grown produce shipped in from outside the Denver area. Nineteen of these mountain produce cars were opened; vegetables were unloaded from eleven, other produce added, and the cars then reshipped. The contents of eight cars were unloaded and the goods sold on the local market. One car was reshipped without being opened.

2. The pertinent provisions of the Act are as follows:

(§ 207) "(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives a compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

"(b) No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of that specified in such subsection without paying the compensation for overtime employment prescribed therein if such employee is so employed— * * *

"(3) for a period or periods of not more than fourteen workweeks in the aggregate in any calendar year in an industry found by the Administrator to be of a seasonal nature,

* * * * * *

"(c) * * * in the case of an employer engaged in the first processing of, or in canning or packing, perishable or

With respect to the employees involved Domenico claimed eleven weeks exemption for them under Section 7(b) (3) of the Act for weeks between the period of July 24, 1952, and through the work week ending October 16, 1952, and claimed an additional exemption of eleven weeks under Section 7(c) of the Act.[2] Of this additional time, eight weeks were for the period beginning August 14, 1952, through October 30, 1952. Admittedly all the employees for whose work exemption is claimed either under 7(b) (3) or 7(c) performed whatever work was to be done without regard to whether it was with respect to local produce or to the mountain grown produce.

While there seems to be some overlapping of Sections 7(b) (3) and 7(c), they are not identical. Section 7(b) (3) is broader in scope than is 7(c). Section 7(c) relates only to the first processing, canning or packing of perishable or seasonable fruits or vegetables. To come within the exemption of this provision it is necessary that the work of the employees be confined to such operations.[3] The work which Domenico's

seasonable fresh fruits or vegetables, * * * the provisions of subsection (a) of this title, during a period or periods of not more than fourteen workweeks in the aggregate in any calendar year, shall not apply to his employees in any place of employment where he is so engaged."

3. In Fleming v. Swift & Co., D.C., 41 F. Supp. 825, 832, the court states: "An employer may not claim an exemption for any employee under sec. 7(c) if the employee during any part of the workweek for which the exemption is claimed does any work which does not fall within the scope of the exemption." To the same effect see Shain v. Armour & Co., D.C., 50 F.Supp. 907; Walling v. DeSoto Creamery & Produce Co., D.C., 51 F. Supp. 938; Walling v. Peacock Corp., D.C., 58 F.Supp. 880; Ivey v. Foremost Dairies, Inc., D.C., 106 F.Supp. 793, reversed in part on other grounds, 5 Cir., 204 F.2d 186; Waialua Agricultural Co. v. Ciraco Maneja, D.C., 77 F.Supp. 480, reversed in part on other grounds, 9 Cir., 178 F.2d 603; McComb v. Del Valle, D.C., 80 F.Supp. 945.

employees did on the mountain grown vegetables did not constitute first processing. Such processing was completed when the mountain grown vegetables were readied, crated, and placed in cars for shipment, and the work which Domenico's employees did on the vegetables in these cars bore no reasonable relation to first processing.

As stated, Section 7(b) (3) is broader in scope than is Section 7(c). It is not restricted to first processing of such fruits or vegetables. In fact, it is not limited to fruits and vegetables but applies to all seasonable industries. The Section does not undertake to define seasonable industries but leaves the duty of doing so to the Administrator. In Sections (1) and (2) of the first part of the Administrator's regulation he has defined a seasonable industry as one in which the person is engaged in "handling, extracting or processing of materials during a season or seasons occurring in a regularly, annual recurring part or parts of the year; and (2) Ceases production, apart from work such as maintenance * * * in the remainder of the year because of the fact that, owing to climate or other natural conditions * * *" such processes or materials are not available. Nothing is said about first handling, extracting or processing.

We think we may judicially note that the growing of all vegetables is seasonal and that the season for growing vegetables in the mountains west of Denver coincides in point of time with similar vegetables grown in the valley adjacent to Denver. The only difference, if any might be, is that the season for growing mountain vegetables is somewhat shorter. It would, therefore, seem that one engaged in purchasing, brokering or selling in carload lots fresh vegetables grown in this area would be engaged in a seasonable industry as such is defined in the regulation. Such activities are seasonable to the same extent as are activities for the purchase of the same vegetables from the producers thereof. There is no difference in the seasonable character of a business in which a business man purchases for resale in carload lots vegetables which have been first purchased and originally first processed by his vendor and a business in which one buys such vegetables direct from the producers, has them processed, crated, placed in cars and then sold to the trade.

Reliance is placed upon a ruling by the Administrator that "The packing, handling, and preparing in their raw or natural state of perishable or seasonable fresh fruits and vegetables is a branch of an industry and of a seasonal nature within the meaning of Section 7(b) (3) of the Fair Labor Standards Act and Part 526, as amended, of the Regulations issued thereunder." 5 Fed.Reg. 3167. But that ruling does not purport to define a seasonable industry. That was issued pursuant to an application for a hearing with respect to the status of first processors and all it purports to state is that such processing constitutes a branch of a seasonable industry. It does not purport to state that only such operations with respect to seasonable fruits and vegetables shall constitute a seasonable industry. Indeed, if it limited the definition of a seasonable industry with respect to fresh vegetables to first processing it would be in direct contravention of the mandate of Section 7(b) (3) making it the duty of the Administrator to define a seasonable industry. Such a definition must be a reasonable one and must embrace all activities which reasonably relate to the handling of seasonable fruits and vegetables. This the Administrator did in promulgating the general definition of a seasonable industry as hereinbefore set out.

In Wyatt v. Holtville Alfalfa Mills, Inc., D.C., 106 F.Supp. 624, 631, the court said: "The test under this particular subsection is not the operation of the individual employer, but that of the industry as a whole. If the industry is seasonal in nature, the benefit of such a finding extends to every employer in that industry, even though the particular employer's operations may not, in fact, be seasonal. Hendricks v. Di Giorgio Fruit

**116**

Corp., D.C., 49 F.Supp. 573; 3 C.C.H. Labor Law Reporter, par 25,250." And in Hendricks v. Di Giorgio Fruit Corp., D.C., 49 F.Supp. 573, the court said that the only requirement for coming under 7(b) (3) was a finding by the Administrator that the industry or branch of an industry was of a seasonable nature. We think these cases require the conclusion that all parts of an industry that is seasonable are entitled to the exemption of Section 7(b) (3). We think it is without dispute that Domenico's operations with respect to the mountain grown vegetables fall within the spirit of Section 7(b) (3) as well as within the definition of the Administrator defining a seasonable industry. It follows that since Domenico's employees work on both first processed fruits and vegetables and on mountain grown vegetables he is entitled to a fourteen weeks exemption from the overtime payment provision of the Act, within Section 7(b) (3), but is entitled to claim no exemption under Section 7(c).

That portion of the judgment which enjoins alleged violations of Section 7(b) (3) is set aside and vacated. The portion of the judgment restraining Domenico from employing his employees in work either in the first processing operation or work on the mountain grown vegetables for a period of fourteen weeks in excess of forty hours per week without overtime payment for work in excess of forty hours per week is vacated and set aside. The portion of the decree enjoining Domenico from shipping or selling in interstate commerce fruits and vegetables upon which his employees have worked for more than forty hours a week for a fourteen week period without payment of overtime compensation for hours worked in excess of forty hours is vacated and set aside.

As so modified, the judgment is affirmed.

MELLOTT (concurring in part and dissenting in part).

The question of the applicability, under the facts in this case, of Section 7 (b) (3) of the Fair Labor Standards Act, set out in the prevailing opinion, is admittedly a difficult one. Finding that my views coincide with those of the trial court, I reluctantly note my dissent to the portion of the present opinion modifying the judgment below.